IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

FLORIDA A&M UNIVERSITY
BOARD OF TRUSTEES,

      Appellant,

v.

JUSTIN BRUNO,

      Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-1410

_____/

Opinion filed August 15, 2016.

An appeal from the Circuit Court for Leon County.
John C. Cooper, Judge.

Laura Beth Faragasso of Henry Buchanan, P.A., Tallahassee; Shira R. Thomas, Acting General Counsel, Ana Gargollo-McDonald and Olorunfunmi Ojetayo, Assistant General Counsels, Tallahassee, for Appellant.

Charles T. Wells, Richard E. Mitchell, and Andy Bardos of GrayRobinson, P.A., Orlando, in support of Appellant by Amici Curiae University of Central Florida Board of Trustees, University of Florida Board of Trustees, Florida State University Board of Trustees, University of South Florida Board of Trustees, Florida Atlantic University Board of Trustees, University of West Florida Board of Trustees, University of North Florida Board of Trustees, Florida International University Board of Trustees, Florida Gulf Coast University Board of Trustees, New College of Florida Board of Trustees, and Florida Polytechnic University Board of Trustees.

Mutaqee Akbar of Akbar Law Firm, P.A., Tallahassee, for Appellee.

Justin S. Hemlepp of J.S. Hemlepp, P.A., Tampa, in support of Appellee by Amici Curiae Knight News, Inc., Jacob Milich, Sean Lavin, Jake Rakoci, Thomas Oreste,

Justin Hemlepp, Esq., Evan Rosenberg, Esq., Elizabeth Helmer Loreti, Kevin Wokenfeld, Victoria Manglardi, Esq., John Zimmerman, Arianna Young, Justin Martineau, Kyle Considder, Ricky Ly, Sabrina Philipp, Megan Seery, Stephanie Matthews, Esq., Ryan Garrett, Christina Lynn Kimball Walker, Esq., Sloane Rosenberg, Caroline Talev, Fernando Gonzalez, Esq., Luiz Centenaro, Jerome Pozin, Harrison Poole, Esq., Shrah Anderson and Jeffrey Sirmons, Esq.

WETHERELL, J.

Appellant, the governing body of Florida A&M University (FAMU), seeks review of the trial court's order enjoining a student government election at the university's main campus in Tallahassee. Appellant raises three issues on appeal, but we only need to address one: whether the trial court had subject-matter jurisdiction to entertain the complaint for emergency injunctive relief filed by Appellee. As explained below, we agree with Appellant's argument that the trial court did not have jurisdiction based on the plain language of section 1004.26(5), Florida Statutes (2015). Accordingly, we reverse the order granting the injunction and remand for entry of an order dismissing this case.

**Factual and Procedural Background**

In February 2016, FAMU's student government association (SGA) held an election for SGA president and vice president for the 2016-17 school year. The election pitted Justin Bruno and Devin Harrison (the Bruno/Harrison ticket) against

2

Victor Chrispin and Pernell Mitchell (the Chrispin/Mitchell ticket).[1] The Bruno/Harrison ticket received a total of 1,366 votes, including 153 at the law school precinct in Orlando. The Chrispin/Mitchell ticket received a total of 1,203 votes, including only 7 at the law school precinct.

After the Bruno/Harrison ticket was declared the winner of the election, the Chrispin/Mitchell ticket filed an appeal with the Student Supreme Court[2] as authorized by the Election Code in the FAMU Student Body Statutes. The appeal argued that the election results should be invalidated because the ballots at the law school precinct were not secured or counted in accordance with the Student Body Statutes. The Student Supreme Court held a pre-trial hearing on the appeal, but it did not hold a trial. Instead, based on an admission from the Student Electoral Commissioner[3] that the election procedures in the Student Body Statutes were not

---

[1] The FAMU Student Body Constitution provides in article IV, section 3 that the SGA president and vice president "shall be elected on a joint ticket."

[2] The Student Supreme Court is a component of FAMU's SGA and is comprised of students appointed by the SGA President and approved by the Student Senate. See FAMU Student Body Const. art II; art V, § 1; art. V, § 2. The jurisdiction of the Student Supreme Court includes "cases and controversies involving questions of Constitutionality of actions by students, student governing groups, and student organizations, with reference to [the Student Body] Constitution" and "violations of the . . . Student Body Statutes." FAMU Student Body Const. art. V, §§ 3A, 3B.

[3] The Electoral Commissioner is an elected SGA officer and has "complete administrative responsibility for carrying out elections under [the Student Body] Constitution." FAMU Student Body Const. art. VII, § 3. The Electoral Commissioner is the head of the Electoral Commission that oversees the election process. See FAMU Student Body Stat. § 601.3.

followed at the law school precinct, the Student Supreme Court declared the election invalid and called for a new university-wide election.

The Bruno/Harrison ticket appealed the Student Supreme Court's decision to the university's Vice President of Student Affairs (VP-Student Affairs) and President, as authorized by the FAMU Student Body Constitution[4] and Statutes.[5] The appeal argued that the Student Supreme Court should not have considered the Chrispin/Mitchell ticket's appeal because it was not filed in compliance with the Student Body Statutes and that the Student Supreme Court did not follow the procedures mandated by the Student Body Statutes when it decided the appeal without holding a trial. The VP-Student Affairs and the President both affirmed the Student Supreme Court's decision.

Thereafter, Bruno filed a complaint for emergency injunctive relief in the Leon County Circuit Court in which he sought to enjoin the new election called for by the Student Supreme Court. The gravamen of the complaint was that the Student Supreme Court's decision "violates the letter and spirit of the [FAMU] Student Body Constitution and Statutes," and that Bruno would be irreparably harmed if the

---

[4] Article V, section 5 of the Student Body Constitution gives students the "right to appeal Student Supreme Court decisions to the Vice President of Student Affairs and the University President."

[5] Section 604.F. of the Election Code in the Student Body Statutes provides: "If someone feels the Supreme Court has violated his/her rights to a fair hearing or due process, he/she may appeal to the proper appellate or administrative entity."

4

election went forward because of the costs associated with running a new election and the possibility that he and Harrison might lose the election. The complaint did not cite any state or federal law that was allegedly violated by the Student Supreme Court's decision.

Appellant filed a motion to dismiss the complaint based on section 1004.26(5), Florida Statutes, which provides: "There shall be no cause of action against a state university for the actions or decisions of the student government of that state university unless the action or decision [1] is made final by the state university and [2] constitutes a violation of state or federal law" (emphasis added). Appellant argued that the Student Supreme Court's decision to hold a new university-wide election was an SGA matter over which the trial court lacked subject-matter jurisdiction because Bruno had not alleged that the decision violated any state or federal law.

The trial court denied the motion to dismiss and held an evidentiary hearing on the complaint. At the conclusion of the hearing, the court found that Bruno had shown a likelihood of success on the merits because although it was undisputed that the election at the law school did not comply with the Student Body Statutes, the Student Supreme Court failed to comply with the Student Body Statutes when it decided the Chrispin/Mitchell ticket's appeal without a trial at which Bruno could have participated. The court further found that Bruno would be irreparably harmed

5

by having to submit to a new university-wide election; that Bruno did not have an adequate remedy at law; and that the public interest would not be served by a new university-wide election.

Based on these findings, the trial court enjoined FAMU from holding a new election at the university's main campus in Tallahassee but authorized the university to hold a new election at the law school. The court explained:

> There appears to be no dispute at this point that the law school . . . didn't follow the rules. And . . . I can't say that the [Student] Supreme Court was wrong in finding that election was not correctly held. However, for the [Student] Supreme Court to say that the law school election was incorrectly held and at the same time . . . invalidate[] the one that no one disputes was correctly held, it's just not logical. It makes no sense. There is no evidence presented to me that . . . the main election that took place at the main university campus in Leon County was held improperly.
>
>    &ast;  &ast;  &ast;
>
> I tend to agree with the [Student] Supreme Court, even though the process was flawed, that it came to the correct result on the law school election. I don't think . . . that there would be irreparable harm if we allow that to go forward. . . . .
>
>    &ast;  &ast;  &ast;
>
> I would like to know how one could explain . . . that you can have an election conducted that follows all of the rules, and then set aside and conduct another one, when someone in some other location didn't follow the rules. The example would be if you had a statewide election, and in Leon County and all of the rules were followed, but in Polk

6

County they violated the rules and as a result of that they required the people in Leon County to submit to another election. That[] just doesn't make sense.

This appeal followed.[6, 7]

## **Analysis**

The dispositive issue in this appeal is whether the trial court had subject-matter jurisdiction over the complaint, or stated another way, whether the court had the requisite authority to adjudicate the dispute presented in the complaint. We review this issue under the de novo standard of review because the question of whether a trial court has subject-matter jurisdiction is a pure question of law. See Faulk v. Dep't of Revenue, 157 So. 3d 534, 535 (Fla. 1st DCA 2015).

Bruno's complaint challenges a decision made by a component of the FAMU SGA – the Student Supreme Court – not a decision made by the university's administration. Accordingly, the trial court's authority to hear the dispute is governed by section 1004.26(5), which contains two clear and unambiguous requirements that must be met before there can be a cause of action against a state university based on a decision made by the university's student government: first, the student government's decision must be "made final" by the university; and

---

[6] We have jurisdiction. See Fla. R. App. P. 9.130(a)(3)(B).
[7] The appeal had the effect of staying the injunction, see Fla. R. App. P. 9.310(b)(2), but there is no indication in the record that the new election mandated by the Student Supreme Court has taken place.

7

second, the decision must violate state or federal law. If either requirement is not met, the university is effectively immune from suit and the trial court lacks jurisdiction over the dispute.

Here, Bruno's complaint met the first requirement in section 1004.26(5) because it sufficiently alleged that the Student Supreme Court's decision to hold a new university-wide election was made final by the university. Specifically, Bruno alleged that the Bruno/Harrison ticket appealed the Student Supreme Court's decision to the university administration as permitted by the FAMU Student Body Constitution and Statutes, and both the VP-Student Affairs and the President affirmed the Student Supreme Court's decision on the merits. There is no further action that remains to be taken by the university's administration and, thus, for purposes of section 1004.26(5), the Student Supreme Court's decision was "made final" by the university. Cf. Students for Online Voting v. Machen, 24 So. 2d 1273 (Fla. 1st DCA 2009) (granting petition for writ of mandamus and directing university president to render a final order with respect to a student group's challenge to a decision made by the university's student government).

However, Bruno did not meet the second requirement in section 1004.26(5) because his complaint did not allege that the decision to hold a new university-wide election for SGA president/vice president violated any state or federal law. Instead, the complaint cited various provisions in the FAMU Student Body Constitution and

8

Statutes, and alleged that the decision to call for a new election violated the "letter and spirit" of those provisions.

Although the trial court suggested that Bruno's due process rights may have been violated because he was not allowed to participate in the appeal filed by the Chrispin/Mitchell ticket with the Student Supreme Court, Bruno's answer brief did not include any argument on the due process clause or federal law to support the trial court's exercise of jurisdiction in this case. Moreover, any procedural violation committed by the Student Supreme Court in the appeal process would not rise to the level of a due process violation because student government is an extracurricular activity – not real government[8] – and it is well-settled that students have no

---

[8] On this issue, we have not overlooked the argument of amici Knight News, et al., that student government is "quite real" because, among other things, the student body president sits on the university's governing body and he or she appoints students to committees that have the authority to recommend increasing various student fees. See §§ 1001.71(1), 1009.24, Fla. Stat. Nor do we discount the dedicated service of student government members – past and present – on behalf of their fellow students and universities. However, we simply find more persuasive the argument in the amicus brief filed in support of FAMU by the boards of trustees of the 11 other state universities, which succinctly explained that:

> Student government is an extracurricular "learning laboratory" for students seeking public service experience within a simulated republic. This practical experience involves value-adding lessons for students in making their own rules, resolving their own controversies, learning from conflict, and conducting their own affairs within their self-created structure without interference by the University's Board of Trustees, unless, of course, a violation of real law is at stake.

9

constitutionally protected right to participate in extracurricular activities. See, e.g., Angstadt v. Midd-West Sch. Dist., 377 F.3d 338 (3d Cir. 2004) (holding that student had no property interest in participation in extracurricular activities); Poling v. Murphy, 872 F.2d 757, 764 (6th Cir. 1989) (stating that privilege of participating in student council was outside due process protection); Fla. High Sch. Athletic Ass'n v. Melbourne Cent. Catholic High Sch., 867 So. 2d 1281 (Fla. 5th DCA 2004) (determining that participation in interscholastic sport activities, standing alone, was not constitutionally protected right).

The complaint did not cite – nor did the trial court identify – any state law that was conceivably violated by the Student Supreme Court's decision to hold a new university-wide election. We find no merit in Bruno's argument that the Student Supreme Court's alleged failure to follow the provisions of the FAMU Student Body Constitution and Statutes cited in the complaint constitutes a violation of state law for purposes of section 1004.26(5) because those provisions were adopted pursuant

Accord Ala. Student Party v. Student Gov't Ass'n of the Univ. of Ala., 867 F.2d 1344, 1347 (11th Cir. 1989) (explaining that student government gives "students who aspire to public service, public life, and who want to gain some experience and expertise in better understanding the way in which democracy functions, an opportunity to learn how to work within the democratic process") (internal quotations and brackets omitted); Flint v. Dennison, 488 F.3d 816, 827 (9th Cir. 2007) (rejecting argument equating student government leaders to elected political officials based, in part, on the fact that student government is "primarily as an educational tool—a means to educate students on the principles of representative government, parliamentary procedure, political compromise, and leadership").

to a statutory mandate.  See § 1004.26(3)(a) (requiring each student government to "adopt internal procedures governing [t]he operation and administration of the student government"), (4)(a) (stating that the election of student government officers "shall be determined by the student government as prescribed by its internal procedures"), Fla. Stat.  We reject this argument because it would effectively render section 1004.26(5) meaningless – and it would frustrate the clear legislative intent of the statute[9] – by elevating every alleged violation of a student government's internal procedures to a violation of state law.  See State v. Goode, 830 So. 2d 817, 824 (Fla. 2002) (stating that "courts should avoid readings that would render part of a statute meaningless").

Finally, it is important to emphasize that our disposition of this case does not necessarily mean that we disagree with the merits of the trial court's ruling or the logic on which it was based.  Indeed, limiting the scope of the new election to the only precinct where the applicable election procedures were not followed seems imminently reasonable under the circumstances.  However, because no state or federal law was violated by the Student Supreme Court's decision to call for a new

---

[9]  See Fla. H.R. Educ. Policy Council, CS/HB 723 (2010) Staff Analysis 4-5 (Apr. 16, 2010) (explaining that section 1004.26(5) was intended to limit the liability of state universities for the actions of their student governments and was expected to reduce litigation costs and fees by limiting the type of suits that can be brought against a university based on the actions of its student government).

11

university-wide election, the trial court simply did not have the authority to make this ruling and second-guess the Student Supreme Court's decision.

## Conclusion

In sum, for the reasons stated above, the trial court erred in denying Appellant's motion to dismiss pursuant to section 1004.26(5). Accordingly, we reverse the injunction and remand for entry of an order dismissing this case.

REVERSED and REMANDED with directions.

LEWIS and JAY, JJ., CONCUR.